UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROMA F. HILL

               Plaintiff,                        CIVIL ACTION NO. 06-14405

             v.                          DISTRICT JUDGE PAUL V. GADOLA

PROVIDENT LIFE AND ACCIDENT      MAGISTRATE JUDGE VIRGINIA M. MORGAN
INSURANCE CO.

               Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This matter is before the court on the defendant's Motion for Judgment Affirming ERISA

Determination (D/E 5).  The case is one brought under the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (2000).  Plaintiff originally filed this

action in state court seeking to collect disability benefits under a Group Long Term Disability

Plan issued to her former employer Saks, Inc.; defendant removed the action based on ERISA.

Plaintiff's application for disability benefits was denied because Provident, a fiduciary of the

Plan, determined that she was not a "covered person" under the Policy.  Provident denied her

claim because she did not provide Evidence of Insurability as required for those employees who

sign up more than 31 days after their date of hire and outside a period of open enrollment.

Although plaintiff has not filed any cross motion, plaintiff argues in response that the

-1-

defendant's determination was improper and was arbitrary and capricious.  The court has carefully reviewed the administrative record and the parties' briefs.  It appears to the court that the decision to deny coverage based on lack of EOI was made immediately, arbitrarily, and without substantial evidence.  Although follow-up was conducted, the activities were done perfunctorily and inaccurately, apparently to buttress an already made conclusion.  The follow up did not ask for the information about the proper period (Fall 2001 instead of Fall 2002).  The defendant did not take into account the failure of the Plan Sponsor to apprise plaintiff of her obligations and provide appropriate Provident forms, and did not exercise its fiduciary obligations appropriately.  It cannot be said as a matter of law that Provident's determination was not made arbitrarily or capriciously, in breach of its fiduciary duties.  For those reasons and as discussed below, the court recommends that defendant's motion be denied.

## II. Legal Standards

### A. Summary Judgment

In reviewing defendants' motion for dismissal and/or summary judgment, the court has examined affidavits and exhibits provided by both parties.  When the court considers materials submitted in addition to the pleadings, Federal Rule of Civil Procedure 12(b) provides that "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Rule 56 of the Federal Rules of Civil Procedure, provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

-2-

In ruling on a motion for summary judgment, the Supreme Court's decision in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), provides guidance.  The Court rejected a standard which required moving parties to support their motions for summary judgment with an affirmative evidentiary showing which tended to negate the essential elements of plaintiff's case.  <u>Id.</u>, 477 U.S. at 324. Instead the Court said, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the non-moving party's case."  <u>Id.</u>  Of course, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-588 (1986).  Once the moving party has made this showing, the burden passes to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  <u>Id.</u>; <u>see</u> <u>also</u>, <u>Roby v. Center Companies</u>, 679 F.Supp. 664 (E.D. Mich. 1987).

**B. ERISA**

Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts.  <u>Aetna Health, Inc. v. Davila</u>, 542 U.S. 200, 208 (2004), quoting 29 U.S.C. §1001(b) (2000). Where a person or entity breaches fiduciary obligations under ERISA, a civil action may be brought by a participant under ERISA §502(a)(1)(B) to recover benefits due him, to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits.  In addition, a civil action may also be brought by a participant under §502(a)(3)(B) to obtain other appropriate

-3-

equitable relief to address violations of the statute or terms of the Plan and/or to enforce any provisions of the statute or terms of the Plan.  See, <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 515 (1996).

Where a claim involving an Employee Benefit Plan is brought under the civil enforcement provisions of ERISA, it is regarded as arising under federal law.  The courts have been directed to develop substantive federal common law as necessary to interpret ERISA and fashion remedies to effectuate the policies underlying ERISA.  29 U.S.C. § 1132(a); <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 109-110 (1989).  ERISA generally preempts all state laws that relate to Employee Benefit Plans.  29 U.S.C. § 1144(a).

With one exception, federal district courts have exclusive jurisdiction over civil actions brought under ERISA, including claims alleging breach of fiduciary duty, claims requesting equitable relief, other than benefit claims and claims involving statutory penalties under ERISA. 29 U.S.C. § 1132(e)(1).  The exception applies to civil actions brought under 29 U.S.C. § 1132(a)(1)(B) to recover benefits under the terms of the Plan, enforce rights under the terms of the Plan, or clarify the participant's rights to future benefits under the Plan.  When the exception applies, federal and state courts have concurrent jurisdiction.  29 U.S.C. § 1132(e)(1).  The amount in controversy or the citizenship of the parties is irrelevant.  29 U.S.C. § 1132(f).

While ERISA governs the Employee Benefit Plan in general, whether a claimant is entitled to disability benefits is determined by the language set forth in the individual Plan.

**C. ERISA Standard of Review**

The United States Supreme Court held in <u>Firestone Tire & Rubber Co. v. Bruch</u> that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. Where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, the more deferential arbitrary and capricious standard of review is appropriate. <u>Yeager v. Reliance Standard Life Ins. Co.</u>, 88 F.3d 376, 381 (6th Cir. 1996). Thus, a reviewing court should first examine the Plan to determine whether defendant is a Plan administrator or fiduciary, and whether the required discretion has been given. Federal common law rules of contract interpretation apply to ERISA Plans and those rules dictate that this Court interpret the Plan's provisions according to their plain meaning and in their ordinary and popular sense. <u>Perez v. Aetna Life Ins. Co.</u>, 150 F.3d 550, 556 (6th Cir. 1998).

*1.  Defendant is a fiduciary with discretion to interpret the Plan.*

The Voluntary Group Long Term Disability Insurance Certificate ((00034-00060) [the Plan] issued in this case states "It is the intent of the Plan Sponsor that the Claims Fiduciary shall have the sole and exclusive discretion and authority to carry out all actions involving claims procedures explained in the Policy. The Claims Fiduciary shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any

-5-

type made by the Claims Fiduciary shall not be disturbed unless the Claims Fiduciary has acted

in an arbitrary and/or capricious manner."

      Under ERISA, a Plan "fiduciary" is one who "exercises any discretionary authority or

discretionary control respecting the management of [an ERISA] plan or exercises any authority

or control respecting the management or disposition of its assets" or who "has any discretionary

authority or discretionary responsibility in the administration of such plan."  29 U.S.C. §

1002(21)(A).  The definition is meant to be a functional one and includes both people

specifically named as fiduciaries by the Plan and anyone else who exercises discretionary control

or authority over a Plan's management, administration, or assets.  Moore v. LaFayette Life Ins.

Co., 458 F.3d 416, 438 (6th Cir. 2006).  In this case, the plain meaning of the Plan language

establishes that defendant has discretionary authority in disputes concerning benefits,

interpretation of the terms of the policy, and questions of coverage and eligibility for benefits.

Defendant clearly has discretionary authority in the administration of the Plan and is therefore a

fiduciary.  In addition, the Plan grants defendant discretionary authority to determine eligibility

for benefits or to construe the terms of the Plan.  While there are no "magic words" required to

vest discretion, this circuit has consistently required that the Plan's grant of discretionary

authority be express and clear.  See, e.g., Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555-556

(6th Cir. 1998); Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996);

Wulf v. Quantum Chemical Corp., 26 F.3d 1368, 1373 (6th Cir. 1994).  The court finds that it is

so here.

-6-

        *2.  The decision is subject to the arbitrary and capricious standard of review.*

Since the Benefit Plan grants defendant as a fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, the more deferential arbitrary and capricious standard of review is appropriate.  See, <u>Yeager v. Reliance Standard Life Ins. Co.</u>, <u>supra</u>.  The arbitrary and capricious standard of review is "the least demanding form of judicial review of administrative action," <u>Williams v. International Paper Co.</u>, 227 F.3d 706, 712 (6th Cir. 2000), and is applied in order to avoid "excessive judicial interference with plan administration."  <u>Daniel v. Eaton Corp.</u>, 839 F.2d 263, 267 (6th Cir. 1988) (citations omitted).  The decision of a Plan administrator will not be considered arbitrary and capricious if it is "rational in light of the plan's provisions." <u>Daniel</u>, 839 F.2d at 267.  Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." <u>Williams</u>, 227 F.3d at 712.  Even the financial stake of defendant in the outcome of its decisions on eligibility will not *per se* cause a *de novo* review.  The Sixth Circuit, has rejected the view that a conflict of interest warrants abandoning the arbitrary and capricious standard.  <u>McCartha v. National City Corp.</u>, 419 F.3d 437, 442-443 (6th Cir. 2005).  Rather than causing a change in the standard of review, a conflict of interest is taken into account as a factor in determining whether the decision was arbitrary and capricious.  <u>University Hospitals Of Cleveland v. Emerson Elec. Co.</u>, 202 F.3d 839, 842 (6th Cir. 2000).

### III. Background

 *1. Plaintiff's situation:*

 In October, 2000, plaintiff began work as a retail sales clerk at Parisian, a subsidiary of

Saks, Inc.  Plaintiff was employed as a sales associate and performed duties in the area of

customer service, including sorting merchandise, working as a cashier, and cleaning fitting

rooms.  The work required a good deal of standing.  In the spring of 2005, at age 50, plaintiff

began having difficulty with her right knee.  It was swelling and felt like it was going to give out.

She saw Dr. DiFelici for treatment of her condition in May 2005 and continued to work with

restrictions.   On or about July 10, 2005, plaintiff applied for disability benefits pursuant to the

insurance policy defendant issued to Saks.  Plaintiff's application for benefits was based on her

knee condition.  She submitted an attending physician's statement from Dr. DiFelici, who

diagnosed right knee pain and PES bursitis.  Plaintiff treated with physical therapy and anti-

inflammatory medications.

 At the time of her claim, plaintiff was working for Parisian at its location in Birmingham,

Alabama, and had previously been employed at Parisian in Michigan.  She has now returned to

Michigan.  When plaintiff applied for benefits in 2005, defendant reflected her insured effective

date as 1/1/2002.  (00004)[1]   In January 2002, Saks began taking deductions from her pay to

cover 100% of the premium payments.  (00007)  Despite the deductions of premiums by her

employer and acceptance of the premiums by defendant for three years, defendant determined, at

---

 [1]References are to the Bates numbers of the Administrative Record attached to
defendant's motion.

the time she sought benefits in 2005, that she was not a "covered person" because she had not

provided Evidence of Insurability (EOI). There is nothing in the record that reflects that plaintiff

was ever asked to provide EOI or given appropriate forms to do so. When plaintiff was

informed by defendant about her status, plaintiff explained that when she was hired full time in

October 2000 the HR person did not offer the LTD coverage. When the new HR person came in

a year later, LTD coverage was offered. (00190)  Plaintiff alleges that she did not know she had

to do so, and that she was never told that she needed to provide such evidence of insurability at

that or any other time.   Plaintiff has not sued Saks or Parisian.[2]

   2. *Defendant's Actions*

   Defendant's employees Rachel Galyon, Seth Goodwin and others worked on plaintiff's

claim file. (00173)   The file-notes reflect that Ms. Galyon first conducted an eligibility review.

Plaintiff enrolled more than one year after her hire date and there was no Evidence of

Insurability (EOI) in the file (00007) and none had been received in underwriting (00134).

Under the policy terms, Plan participants were required to provide Evidence of Insurability if

they applied for coverage (1) under late enrollment (more than 31 days after beginning

employment and not during an "open enrollment" period); (2) for reinstatement; or (3) were

eligible but not covered under the prior Plan. Plaintiff admits that she enrolled two years after

her hire date. While plaintiff does not dispute what the Plan said about Evidence of Insurability,

---

[2]At oral argument, there was discussion of plaintiff's amending the complaint to include
the employer/Plan Sponsor Saks, Inc. to allege violation of its fiduciary obligations under
ERISA and the court was under the impression that plaintiff would do so. To date, however,
plaintiff's counsel has not filed any such amended complaint.

she told the defendant that she was never advised of this requirement and that she was never

given any forms to do so.  (00208)  The Administrative Record is consistent with her statement

in this regard; there is nothing in the AR which shows she was provided any forms or advised of

the need to submit an EOI by anyone from defendant, Saks, or Parisian.  The Plan language

states that Evidence of Insurability was required to be submitted <u>on the form prescribed by</u>

<u>defendant</u>.

> "Evidence of Insurability means [a participant] must:
>
> 1.  Complete and sign <u>our</u> health and medical history forms;
> 2.  Sign <u>our</u> form authorizing us to obtain information about your health and medical history;
> 3.  At your expense, undergo a physical examination, if required by us, which may include blood testing; and
> 4.  At your expense, provide any additional information about your insurability that we may reasonably require."

(00040)

While eligibility was still an issue, defendant also requested and received plaintiff's

medical releases and records.  The Administrative Record entries relevant to the eligibility

determination include the following:

| | |
|---|---|
| 9/12/2005: | DOH 10-9-2000            EDOC= 1-1-02 Eligibility<br>Issues: Enrolled 1+ after hire date.  EOI would be required.  No EOI received in our underwriting area.  Recommend: Claim denial and Premium Reimbursement as Ms. Hill did not provide EOI when enrolling for coverage in 2002.  As such she is not a covered ee. |
| 9/13/05; 8:36 am: | Response: Rachel, I agree that this claimant is not eligible for coverage and the claim must be denied.  I will forward to QCC for final review and sign off. Thanks.  Amy Nayadley |
| 9/13/2005: | Ms. Nayadley forwarded the email to Dave Tocchini, Quality Compliance Consultant. |

| | |
|---|---|
| 9/19/2005: | Response from Mr. Tocchini: I have discussed the claim with the DBS. One thing that we need to check prior to my decision. We need to contact the sales office make sure they did not have an open enrollment during the time period the EE signed up for coverage. The DBS has been in contact with underwriting. Once we receive the sales office answer, please refer back to me. (000135) |
| 9/15/2005: | Currently waiting on sales office enrollment info as requested by QCC [signed] R. Galyon (00136) |
| 9/15/2005 8:45 | Contacted the sales office and Christine Weeder @770-392-8482 to request the following information: Open enrollment offered in 2002. If so, date open enrollment offered and underwriting who approved waiver of EOI requirements. Spoke with Sarah as Christine was out of office and Sarah stated that they are researching their records for that information. Once information is found will return call and confirmed phone number. R. Galyon (00164) |
| 9/19/2005 | ER indicated to review EOI with underwriting. Contact sales office x4 for information. R. Galyon (00172) |
| 9/20/2005; 15:31 | (by Seth Goodwin) Called and left vmail for Christine at the sales office on behalf of Rachel Galyon since she was out of the office. I stated that I was following up to Rachel's conversation copied below: ****Contacted the sales office and Christine Weeden @ 770-392-8482 to request the following information: Open Enrollment offered in 2002. If so, date open enrollment offered and underwriting who approved waiver of EOI requirement. Spoke with Sarah as Christine was out the office and Sarah state that they are researching their records for that information ***********************I left my name/ext# and also stated that Rachel may even be back in tom., but if not I should be here. I thank her for her time in advance. . .ending the message. S. Goodwin. Completed by Galyon, Rachel 9/21/2005 7:17:17 (00173) |
| 9/22/2005; 12:53 | Attempted phone call to sales office, Kristeen Weeden. Her message indicated office was closing at 11:00 am today for an outing and she would be on vacation 9/23/05 and can contact Michelle on 7/23/05. [sic] R. Galyon. (00174) |
| 9/27/05 8:54 | Called Atlanta Sales office to confirm open enrollment information for Saks ee's during fall of 2002. Kirsteen Weeden transferred call to Sarah |

-11-

Cartwright.  Sarah stated that after looking through the files, they can only find re-enrollment info and no open enrollment info provide for the fall of 2002.  She stated that she also spoke with Martha Emmet at Saks who also indicates that a re-enrollment process was offered for the fall 2002 period.  Thank Sarah for her assistance and call ceased.  R. Galyon (00175)

9/27/2005:     Per phone call with sales office no open enrollment period was offered during the 2002 period and it was a re-enrollment process only. ER has indicated that there is no additional information to confirm enrollment prior to 2002.  Confirmed that there was no EOI provided.  Since Ms. Hill was hired in 10/2000 and no enrollment prior to 1/1/2002 as such she would have  been required to complete EOI as she was enrolling more than 31 days after her original hire date.  Recommend: Claim denial and premium reimbursement as Ms. Hill did not provided EOI when enrolling for coverage in 2002 as such she is not a covered ee. [Rachel Galyon]

Response: Rachel, I agree with your recommendation to deny this claim based on your rationale above.  Per last QCC review, you have clarified with the Sales office that there was no open enrollment period.  I will refer back to QCC for final review and sign off.  Thanks.  Amy Nayadley 9/27/05-9:07 am (00176)

9/28/2005:     Dave Tocchini:  Agree with your claim decision.  Based on the current facts in the file the EE is not eligible for LTD benefits.  To be eligible for coverage the EE had to complete an EOI form submit it for our review and have it approved.  This was never competed.  The ER did not have an open enrollment the time the EE signed up for coverage.  (00177)

From this summary, it can be seen that Ms. Galyon called the Atlanta Sales Office to see if there had been an open enrollment period during Fall of 2002.  (00175)  This appears to be the wrong period.  If plaintiff signed up and had deductions taken from her check beginning January 1, 2002, the appropriate sign up time would have been Fall, 2001.  On 9/20/05, Seth Goodwin noted that he left a voice mail for Christine at the Sales Office to see if there had been an open enrollment period during Fall 2002.  (00173)   After several contacts, it appeared that no open enrollment period had been in effect during the Fall of 2002.  (00009. 00174)  Sarah, an

-12-

employee in sales, had looked through their files and found that they had re-enrollment

information for the fall of 2002, but no open enrollment.  (00175)  At this stage of the claim

investigation, when defendant found that it did not have "evidence of insurability" for plaintiff, it

denied the claim, apparently without further consideration of the medical records.  (00176)

[There is some reflection that on August 16, 2005, plaintiff was not eligible for benefits because

she had been released to part time work. (00009)]

        Dave Tocchini, a quality compliance consultant with Provident, concluded that Evidence

of Insurability was required, had not been received, and therefore plaintiff was not eligible for

benefits.  It appears that he failed to recognize that the request may have been made for the

wrong period.  Ms. Galyon advised plaintiff September 29, 2005, that her claim was being

denied.  Plaintiff appealed.  In her appeal letter, plaintiff stated that she was given the "run

around" by her employer who then told her that it was too late for her to enroll.  (00208)  She

acknowledged that she first enrolled in the LTD program in January 2002.  In addition, a co-

employee Karana Roach wrote and said that she had worked at Saks with plaintiff for five years,

and that when she and plaintiff started working, there was no one to process their benefit

enrollment forms because there was no Human Resource person on site or available.  The

assistant manager told them that they would have to wait until the following year's enrollment

period.  (00209)

        Plaintiff's appeal was reviewed by Marilyn Howard, an appeal consultant.  She affirmed

the earlier denial for the same reason.  Although recognizing that the phone number at the

address they had for plaintiff was disconnected (00215), and that they had been contacted by a

-13-

lawyer, they did not send a copy of the denial to the lawyer or have any contact with her.  They

advised the lawyer, Jill Nylander, when she was on the phone with plaintiff calling defendant,

that the ER (Saks, Inc.) was in charge of enrollment and that "either plaintiff would have been

informed verbally or in writing when she received her enrollment sheet. . ." – this despite the

plaintiff's direct contradiction of the general circumstances relied on by defendant.  The final

denial of plaintiff's claim occurred November 17, 2005.  She filed suit in state court September

7, 2006, and appeals the denial of her claim for benefits.  The action in state circuit court seeks a

declaratory judgment and breach of contract damages.  Defendant removed the action here on the

grounds that the policy was a Defined Benefit Plan under the provisions of the Employee

Retirement and Income Protection Act (ERISA) 28 U.S.C. § 1132(a)(1)(B).

## IV. Analysis

Defendant, and the employer Saks, Inc., were fiduciaries under the terms of ERISA.  The

duties of a fiduciary are set forth in ERISA §404(a)(1), which instructs that a "fiduciary shall

discharge his duties with respect to a plan solely in the interest of the participants and

beneficiaries and . . . with the care, skill, prudence and diligence under the circumstances then

prevailing that a prudent man acting in a like capacity and familiar with such matters would use

in the conduct of an enterprise of a like character and with like aims. . .."  29 U.S.C.

§1104(a)(10(B).  In Mertens v. Hewitt Associates, 508 U.S. 248, 262 (1993), the United States

Supreme Court elaborated on the duties, saying that "fiduciaries are assigned a number of

detailed duties and responsibilities, which include the proper management, administration, and

investment of [Plan] assets, the maintenance of proper records, the disclosure of specified

-14-

information, and the avoidance of conflicts of interest."  508 U.S. at 251-252, quoting

Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142-143 (1985).  Subsequently, the

Court also held:  "There is more to plan (or trust) administration than simply complying with the

specific duties imposed by the plan documents or statutory regime; it also includes the activities

that are "ordinary and natural means of achieving the objective of the plan."  Varity Corporation

v. Howe, 516 U.S. 489, 504 (1996) (citing Bogert & Bogert, Law of Trust and Trustees §551 at

41-52).  A fiduciary owes a duty to participants and beneficiaries of the welfare plan.  Plaintiff is

a participant and both defendant and Saks, Inc owe her fiduciary obligations with respect to

communicating benefit options, selection of Plan, and pro per completion of enrollment forms.

Both defendant and Saks, Inc., have a fiduciary obligation to audit employee benefit application

forms to determine accuracy and completeness.  No one contacted plaintiff at any time until she

made her claim.  For a three-year period, the lack of appropriate forms could have been remedied

without consequence.  No one contacted plaintiff to advise her that the paperwork was lacking.

Instead, they deducted and accepted her premium payments and only when she made a claim did

defendant inform her that she was not properly enrolled.  This is arbitrary, capricious, and a

breach of the defendant's fiduciary obligations.

     Although the arbitrary and capricious standard of review is "the least demanding form of

judicial review of administrative action," Williams v International Paper Co., 227 F.3d 706, 712

(6th Cir. 2000), it does not mean that defendant's actions are subject to no judicial review at all.

Applying this standard in this case, asking defendant at a minimum to have requested the

appropriate time period for the "open enrollment," following up with its co-fiduciary the

-15-

employer to determine whether in fact forms and appropriate paperwork were actually given to this employee or whether she should have been signed up immediately but for the lack of a Human Resource person, and to conduct some kind of minimal audit during the course of the three years it accepted 100% of the premiums from her or permit her to submit late forms for the relevant EOI time period since no time period for submission is specified in the contract, would certainly not lead to "excessive judicial interference with plan administration." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988) (citations omitted).  The decision of a Plan administrator will not be considered arbitrary and capricious if it is "rational in light of the Plan's provisions." Daniel, 839 F.2d at 267.  Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Williams, 227 F.3d at 712.  Here, there is no reasoned explanation forthcoming to explain the circumstances of plaintiff's lack of EOI paperwork.   Defendant had a fiduciary obligation to administer the Plan for her benefit and for that of the other participants.  This is not an ordinary contract.  It is a trust.  It appears that the financial stake of defendant in the outcome of its decisions on eligibility may have caused it to overlook its duty as a fiduciary to administer the Plan for the benefit of the participants.  This conflict of interest is appropriately taken into account as a factor in determining whether the decision was arbitrary and capricious. University Hospitals Of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 842 (6th Cir. 2000).

Plaintiff is not a Human Resource specialist.  She is a retail clerk.  There may not be evidence of bad faith on the part of Saks, Inc., or defendant Provident, but certainly there can be no culpability attributed to plaintiff.  Both Saks, Inc., and defendant are large corporations with

-16-

thousands of employees, and charged specifically as fiduciaries with administration of this and similar Plans.  The record does not indicate whether Saks, Inc., or Provident's employees were properly trained, but "it seems incongruous to pin the problem on [plaintiff] when [the employer's] presumably properly trained Benefits Administrator did not understand [or at least fulfil] the enrollment requirements and [the employer's] payroll department employees did not properly or timely handle an incomplete enrollment form," and Prudential's employees did not request information on the proper sign-up period, audit or confirm paperwork requirements, or follow up to confirm plaintiff's allegations.  See, Atwood v. Swire Coca-Cola, USA,

___ F.Supp.2d ___, 2007 WL 185476 (D. Utah 2007).  It is no defense for Prudential to avoid liability on the grounds that its co-fiduciary Saks, Inc., also failed to fulfil its duties.  While Saks, Inc., has obligations, it is defendant Prudential who ultimately enrolls the participants and determines eligibility.  If they choose to delegate the handling of forms to Saks, Inc., and do not do their own follow up audits, they do so at their peril, not that of the employee plaintiff.

Plaintiff's entitlement to monetary damages in the form of LTD payments may not be appropriate under ERISA.  See, ERISA §502(a)(3)(B).  However, plaintiff is certainly entitled to the equitable relief of being placed into the position that she would have been in had Saks, Inc., properly enrolled her in the Plan or had she enrolled during an open enrollment period when defendant first began accepting her premium payments.   Thus, she would be deemed to be properly enrolled without the need for now submitting EOI forms and Prudential should then review her claim for LTD benefits on the merits.  Prudential's Motion for Judgment Affirming ERISA Determination should be denied.

**V.  Conclusion**

For the reasons stated above, the court recommends that the defendant's motion for judgment be DENIED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated:  April 10, 2007

-18-

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 10, 2007.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan