UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROMA F. HILL,

        Plaintiff,

CIVIL CASE NO. 06-14405

v.

PROVIDENT LIFE AND ACCIDENT      HONORABLE PAUL V. GADOLA
INSURANCE CO.,      U.S. DISTRICT COURT

        Defendant.
_____/

## **ORDER**

Now before the Court are Defendant Provident Life and Accident Insurance Company's ("Provident") "Motion for Judgment Affirming ERISA Determination," Plaintiff's reply to that motion, Defendant's response, Magistrate Virginia Morgan's Report and Recommendation on the matter, and Provident's objections to the Report and Recommendation. Plaintiff did not file a response to Defendant's objections. For the reasons stated below, the Report and Recommendation is rejected[1] and Defendant's motion is granted.

**I. Background**

In October, 2000, Plaintiff began work as a retail sales clerk at Parisian, a subsidiary of Saks, Inc. Plaintiff was employed as a sales associate and performed duties in the area of customer service, including sorting merchandise, working as a cashier, and cleaning fitting rooms. The work

---

[1]Although the Court rejects the Report and Recommendation, the Court assigns no error to several portions of that Report. Accordingly, this Court's order uses some of Magistrate Judge Virginia Morgan's language verbatim, for ease of reference and clarity.

required a good deal of standing.  Plaintiff applied for Long-Term Disability ("LTD") insurance through her employer, Saks, Inc., January 1, 2002.  Saks began taking deductions from Plaintiff's pay to cover 100% of the premium payments.

In the spring of 2005, at age 50, Plaintiff began having difficulty with her right knee.  The knee was swelling and felt like it was going to give out.  Plaintiff saw Dr. DiFelici for treatment of her condition in May 2005 and continued to work with restrictions. On or about July 10, 2005, Plaintiff applied for LTD benefits pursuant to the insurance policy Defendant issued to Saks.  At the time of her claim, Plaintiff was working for Parisian, a subsidiary of Saks, Inc., at its location in Birmingham, Alabama, and had previously been employed at Parisian in Michigan. She has now returned to Michigan. Plaintiff's application for benefits was based on her knee condition. She submitted an attending physician's statement from Dr. DiFelici, who diagnosed right knee pain and PES bursitis.  Plaintiff treated with physical therapy and anti-inflammatory medications.

When Plaintiff applied for benefits in 2005, Defendant initially conducted an eligibility review. Defendant's employees Rachel Galyon, Seth Goodwin, and others worked on Plaintiff's claim file. Under the plain policy terms, Plan participants were required to provide Evidence of Insurability ("EOI") if they applied for coverage (1) under late enrollment (more than 31 days after beginning employment and not during an "open enrollment" period); (2) for reinstatement; or (3) were eligible but not covered under the prior Plan.   The Plan language states that Evidence of Insurability was required to be submitted on the form prescribed by Defendant.

Evidence of Insurability means [a participant] must:

1. Complete and sign our health and medical history forms;

  2. Sign our form authorizing us to obtain information about your health and medical history;
  3. At your expense, undergo a physical examination, if required by us, which may include blood testing; and
  4. At your expense, provide any additional information about your insurability that we may reasonably require.

(00040)[2]

The initial review determined that Plaintiff had enrolled more than thirty-one days after her hire date and therefore, under the terms of the Plan, she was required to submit an EOI. However, the review also determined that there was no EOI on file for Defendant. Because Plaintiff had not submitted the forms normally required of a late enrollee, the review team recommended that Plaintiff's claims be denied and the premiums be returned. However, before notifying Plaintiff of the decision, Provident Quality Compliance Consultant Dave Tocchini recognized that Plaintiff, even as a late enrollee, would not have been required to submit an EOI if she enrolled during a Saks "open enrollment" period. After several communications with Saks, Provident concluded that Saks did not have an open enrollment period under which Plaintiff applied for coverage. Therefore, upon final review, Quality Compliance Consultant Tocchini concluded:

> Based on the current facts in the file [Hill] is not eligible for LTD benefits. To be eligible for coverage [Hill] had to complete an EOI form[,] submit it for our review[,] and have it approved. This was never completed. [Saks, Inc.] did not have an open enrollment at the time [Hill] signed up for coverage.

(00177).

Therefore, despite the deductions of premiums by her employer and acceptance of the premiums by Defendant for three years, Defendant determined that Plaintiff was not a "covered

---

[2]The numerical reference is to the Bates numbers of the administrative record attached to Defendant's motion.

person" because she had not provided the EOI. Ms. Hill was notified of the denial of benefits in a letter dated September 29, 2005.

Hill appealed Provident's original decision and, on November 17, 2005, Provident notified her that the appellate review determined that the original decision to deny her claim was appropriate. The letter also stated that following the original determination, Plaintiff had not supplied any information that would support a claim that she had submitted an EOI or that Provident had otherwise approved her for coverage under Saks' insurance policy. (00219).

Plaintiff then filed suit in state court seeking a declaratory judgment and breach of contract damages. Defendant removed the cause of action to federal court under federal preemption of the state law claims because the policy was a Defined Benefit Plan under the terms of the Employee Retirement and Income Protection Act (ERISA), 28 U.S.C. § 1132(a)(1)(B). Plaintiff did not amend his complaint to reflect the applicability of ERISA law.

**II. Legal Standard**

This Court follows the guidelines for ERISA denial of benefit claims provided by the Sixth Circuit in *Wilkins v. Baptist Healthcare System, Inc*., 150 F.3d 609, 619 (6th Cir. 1998). Accordingly, this Court has held:

> the Court's role in an ERISA case such as this is to (1) review Defendant's denial of ... benefits solely upon the administrative record, (2) apply the applicable standard of review, and (3) render findings of fact and conclusions of law accordingly. The Court may not admit or consider any evidence not presented to the administrator.
>
> The Court reviews de novo a plan administrator's denial of ERISA benefits, unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case an arbitrary and capricious standard is applied.

4

> Under the arbitrary and capricious standard, the administrator's claim can be overturned only upon a showing of internal inconsistency, bad faith, or some similar ground. If the plan administrator's decision is rational in light of the plan's provisions and reasonable with no abuse of discretion, then it must be upheld.

*Racknor v. First Allmerica Financial Life Ins. Co.*, 71 F. Supp.2d 723, 728-29 (E.D. Mich. 1999) (Gadola, J.) (citations and footnote omitted). *See also Eriksen v. Metropolitan Life Ins. Co.*, 39 F. Supp. 2d 864, 865 (E.D. Mich. 1999) (Rosen, J.). "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal citations and quotations omitted). *See also Killian v. Healthsource Provident Admin., Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)(A decision will "be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." ).

Nevertheless, "[d]eferential review is not no review, and deference need not be abject." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)(internal citations omitted). *See also Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003) ("Review under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject. Even under the deferential review we will not uphold a termination when there is an absence of reasoning in the record to support it"); *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996) ("Although we review the committees' actions

in a deferential light, we shall not rubber stamp their decisions."). Additionally, "any possible conflict of interest should be taken into account as a factor in determining whether the [Defendant's] decision was arbitrary and capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' ") (quoting Restatement (Second) of Trusts § 187, Comment d (1959)).

**III. Analysis**

In the present case, there is no dispute that under the terms of the Plan, Claims Administrator Provident has discretionary authority to determine eligibility for benefits. Accordingly, this Court reviews the decision to deny benefits under the least demanding of all review standards, considering whether the decision was arbitrary and capricious. *See Racknor*, 71 F. Supp. 2d at 729; *Williams*, 227 F.3d at 712; *Davis*, 887 F.2d at 693(noting that "[t]he arbitrary and capricious standard is the least demanding form of judicial review").

There is also no dispute that Plaintiff was initially employed by Saks in October 2000, but she did not sign up for benefits until January 1, 2002. Although Plaintiff maintains that she was unable to sign up for benefits when she first started working because Saks did not have a human resources specialist available to her, that consideration is not relevant as to whether Provident, as Claims Administrator, made an arbitrary and capricious decision to deny coverage to Plaintiff. Such a consideration could be relevant to a claim against Saks, Inc., as a Plan Administrator, but as stated earlier, no such claim was brought by Plaintiff. Plaintiff was finally able to sign up for the benefits

6

through Saks on January 1, 2002, significantly outside the thirty-one day initial enrollment window.

The first step in Defendant's determination of Plaintiff's claim was to ascertain Plaintiff's eligibility for coverage under the terms of the Plan. Provident employees first verified that Plaintiff had been employed for more than thirty-one days before she applied for coverage. Plaintiff admits that she did not sign up within thirty-one days following her employment. Therefore, as a late enrollee, under the plain and clear terms of the Plan, Plaintiff was required to submit an EOI to receive coverage as a late enrollee. *See* (00040, 00041). Defendant then checked with the underwriting department and determined that Plaintiff had not submitted the required EOI. Therefore, the review team preliminarily recommended that Plaintiff should be denied coverage because she did not meet the requirements of the Plan.

However, before notifying Plaintiff that her claim was to be denied because she was not eligible for coverage due to the EOI issue, Provident Quality Compliance Consultant Dave Tocchini reviewed the matter. Tocchini required the claims team to verify that Plaintiff had not enrolled during an "open enrollment" period offered by Saks, a period in which an EOI would not have been required. The check confirmed that Plaintiff did not enroll during an "open enrollment" period.[3] Therefore, there was no exception to the requirement that Plaintiff submit an EOI to be eligible for coverage and that coverage could not begin until the EOI was not only received by Defendant Provident, but also approved by Provident as well. *See* (00054).

---

[3] Although there is some confusion about whether Defendant checked the appropriate timeframe for any open enrollment period offered by Saks, Inc., the Administrative Record clearly indicates that there was no open enrollment period in 2002 and that Plaintiff had not applied for coverage at any point prior to 2002. (00176, 00177). Furthermore, Plaintiff has not provided any evidence to demonstrate that this was an incorrect conclusion.

Only after this entire process was completed did Provident issue a letter denying Plaintiff coverage. Although this final decision was an unfortunate result for Plaintiff, the explanation for the denial of benefits was neither arbitrary or capricious. Plaintiff admits that she did not apply for benefits through her employer within thirty-one days of beginning employment. Therefore she was a late enrollee that was required to submit an EOI for effective coverage. There is no evidence in the Administrative Record indicating that Plaintiff submitted an EOI before she filed her claim. Accordingly, giving effect to the plain and clear terms of the Plan, Plaintiff did not qualify for coverage. *See Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996). Furthermore, the evidence supports a finding that the denial of benefits was both a deliberate and reasoned decision by Provident and that Provident relied on the substantial evidence then available. *See Williams*, 227 F.3d at 712; *Killian*, 152 F.3d at 520. Although there is some conflict of interest in this matter in that Defendant has the ability to deny eligibility and therefore also refuse to pay out benefits, the Court fails to find any evidence of a conflict of interest sufficient to disturb Defendant's determination that Plaintiff was not a covered employee. *See Firestone Tire & Rubber Co.*, 489 U.S. at 115; *Davis*, 887 F.2d at 694. Defendant made an informed and rational decision based upon the plain and clear terms of the Plan such that the decision cannot be characterized as arbitrary and capricious.

The Court concludes by noting that it is not unsympathetic to the difficult position of Plaintiff. Although it has not been conclusively established, there is an indication that Plaintiff may have been placed in this position through no fault of her own but, instead, only through the mistakes of her employer. However, the fault of Saks is not before the Court at this time. Despite being

questioned about why Plaintiff failed to sue Saks for it's contribution to Plaintiff's plight, and despite Plaintiff indicating that she would amend her complaint to include Saks, Plaintiff inexplicitly failed to take that action. Furthermore, Plaintiff paid premiums for several years in reliance on the coverage, only to have the coverage denied when she needed it. However, the Court notes that Plaintiff's payment of premiums does not provide a claim of equitable estoppel when that reliance, as it is here, is inconsistent with the clear and unambiguous terms of the plan documents. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998); *Lawler v. Unum Provident Corp.*, Case No. 05-71408, 2006 WL 2385043 (E.D. Mich. 2006)(collecting cases).

### IV. Conclusion

Accordingly, for the reasons stated above, **IT IS HEREBY ORDERED** that the Report and Recommendation in this matter [docket entry #12] is **REJECTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment Affirming the ERISA Determination [docket entry #5] is **GRANTED**.

**SO ORDERED.**

Dated:  November 27, 2007        s/Paul V. Gadola
HONORABLE PAUL V. GADOLA
UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   November 27, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
             H. Wallace Parker; Stephen L. Witenoff                    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.

                                                            s/Ruth A. Brissaud
                                                            Ruth A. Brissaud, Case Manager
                                                            (810) 341-7845